UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN D.,[1] | Case No. 8:20-cv-01260-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kathleen D. ("Plaintiff") filed a Complaint on July 15, 2020, seeking review of the Commissioner's denial of her application for supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on May 13, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff filed for SSI on November 9, 2013, alleging disability commencing September 1, 2009. Administrative Record ("AR") 18, 197-202, 662, 669. On July 20, 2016, after her application was denied (AR 79-83, 88-92), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 18, 31-47. On July 28, 2016, the ALJ issued a decision finding Plaintiff was not disabled. AR 18-25.[2]

After the Appeals Council denied Plaintiff's request for review (AR 1-6), Plaintiff appealed to United States District Court for the Central District of California. AR 770-72. On August 22, 2018, Magistrate Judge Suzanne H. Segal reversed and remanded the matter for further proceedings to consider Plaintiff's carpal tunnel syndrome as a severe impairment. AR 773-84; Kathleen D. v. Berryhill, 2018 WL 4042904, *3-4 (C.D. Cal. Aug. 22, 2018). On September 26, 2018, the Appeals Council vacated the Commissioner's prior decision and remanded the case to an ALJ for further proceedings consistent with the District Court's order. AR 787.

A different ALJ convened a second hearing on February 19, 2020. AR 688-726. Plaintiff, again represented by counsel, testified at the hearing, as did another VE. Id. On March 25, 2020, the ALJ issued a written decision finding Plaintiff was not disabled. AR 662-76. The ALJ found Plaintiff had not engaged in substantial gainful activity since the November 9, 2013 application filing date, and had the severe impairments of bilateral carpal tunnel syndrome with history of surgery in 2003; left-hand arthritis; hypertension; obesity; osteoarthritis of the hips; cervical spine degenerative disc disease and stenosis;

---

[2] Many of the underlying administrative documents appear in duplicate in the record. Compare AR 1-6 with AR 764-66, and AR 18-25 with AR 751-58.

left foot calcaneal plantar spur, pes planus and plantar fasciitis; right-knee meniscus tear and arthritis as of July 18, 2019; and left-knee meniscus tear as of December 2019. AR 644-66. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 666.

The ALJ then made two residual functional capacity ("RFC") findings. First, the ALJ found that from the protective filing date through July 17, 2019, Plaintiff had the RFC to perform light work[3] except (AR 667):

> [Plaintiff] could lift and/or carry twenty pounds occasionally, ten pounds frequently; [Plaintiff] could sit for six hours and stand or walk for six hours out of an eight-hour workday; [Plaintiff] could frequently climb, balance, stoop, kneel, crouch or crawl; [Plaintiff] could frequently handle and finger with the bilateral hands.

The ALJ then found that, beginning July 18, 2019, Plaintiff still had the ability to perform light work with the same limitations except her ability to stand and/or walk was further reduced (AR 673):

> [Plaintiff] can lift and/or carry twenty pounds occasionally, ten pounds frequently; [Plaintiff] can sit for six hours of an eight-hour workday; [Plaintiff] can stand and/or walk for four hours out of an eight-hour workday; [Plaintiff] can frequently climb, balance, stoop,

---

[3] "Light work" is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

kneel, crouch or crawl; [Plaintiff] can frequently handle and finger with the bilateral hands.

The ALJ then made two findings regarding Plaintiff's ability to perform her past relevant work as a General Office Clerk (Dictionary of Occupational Titles 291.362-010). AR 674-75. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing that work: (1) from the application filing date through July 17, 2019, as generally performed in the national economy and as actually performed by Plaintiff; and (2) from July 18, 2019, only as actually performed by Plaintiff. Id. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act, since November 9, 2013, the date the application was filed. AR 675-76.

The ALJ's remand decision became the final decision of the Commissioner because neither Plaintiff filed exceptions nor did the Appeals Council initiate review.[4] Dkt. 1 at 2.

## II.
## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if

---

[4] When an ALJ issues a decision after remand from a district court, the claimant has 30 days to file exceptions with the Appeals Council requesting review the ALJ's decision. 20 C.F.R. § 404.984(b). Even where the claimant declines to file exceptions, the Appeals Council may, within 60 days of the decision, sua sponte, assume jurisdiction of the case. 20 C.F.R. § 416.1484(b). "If no exceptions are filed and the Appeals Council does not assume jurisdiction of [the] case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand." 20 C.F.R. § 416.1484(d); see also Hay v. Saul, 2020 WL 2745715, *3 (E.D. Cal. May 27, 2020).

they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.      The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at

5

1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a

"limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present one disputed issue: Did the ALJ properly reject Plaintiff's testimony concerning pain, symptoms, and level of limitation.[5]

**A.     Applicable Law**

Where a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not

---

[5] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, *3 (W.D. Wash. Mar. 4, 2020).

arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

**B.　Subjective Complaint Evidence**

　　1.　Written Submissions

In conjunction with her application for benefits, Plaintiff submitted documents supporting her claim of disability, including an Adult Function Report dated January 26, 2014. AR 225-33.

　　2.　July 2016 Hearing Testimony

The July 2016 hearing is summarized as follows. Plaintiff attended junior college but did not obtain a degree. AR 34. She last worked at the Auto Club as a cashier, posted payments, and ordered stock. AR 35. She left that job because her hands became too uncomfortable. AR 36. She did not file for state disability or unemployment at that time because she had a previous workers' compensation settlement through Albertson's for $42,000, and it was her understanding she could not pursue further relief. AR 36.

At the time of the hearing, Plaintiff lived with her husband in a van outfitted with a roll bed. AR 35, 37-38. The night before the hearing, she parked their van in front of her son's house in Mission Viejo. AR 38. When she is not at her son's house, she parks their van in Riverside near the university student housing. AR 38. Her husband used to work at a nursery, but he was injured and receives workers' compensation. AR 35.

Plaintiff can no longer work because her hands hurt all the time. AR 39-40. She uses her hands very seldomly because doing so worsens the pain. AR

39. She can use her hands to wash and fix her hair, wash her body, eat, drink, and dress. AR 39. However, she cannot lift or carry anything. AR 40. Her hand pain started in 2001 or 2002. AR 39. She had a carpal tunnel release in 2003. AR 39. Hand pain is the only reason she cannot work. AR 39.

She is allergic to anti-inflammatories and does not take any medication for her condition. AR 39.

In February 2014 she met with a doctor for about 10 minutes. AR 40. The examination consisted of raising her hands, tilting her wrist, raising her arms over her head, and raising her arms from her side to her shoulders. Id. The doctor questioned her about her back, but she explained her issue was with her hands. AR 41. Nurses had her shake and squeeze something to see how strong she was, and she experienced severe pain. Id.

        3.      February 2020 Hearing Testimony

Plaintiff last worked for Auto Club in September 2009. AR 696. She had some earnings after that, in 2010, working as a dresser for Fulton Theatre Company, however that only represented two or three weeks of work. AR 696-97. At the Auto Club, she worked as an insurance cashier, but she also helped in the membership department. AR 697. Her job required her to stand and walk about half of the time, sit about half the time, and lift less than 10 pounds. AR 698-99.

She also worked at Longs Drugs as a "fill-in" cashier for less than a year before her job at the Auto Club. AR 699-701. That position was more taxing because she had to stand and twist the whole time. AR 700-01. She did not stock the shelves, and she slid items instead of lifting them. AR 701-02. She never lifted anything more than a gallon of water, about eight pounds. AR 702.

She cannot work anymore because the day progresses, pain increases in her hands, neck, hips, knees, feet, hips, and through her spine. AR 703. She cannot recall how long she has had neck pain. AR 703. She used to be able to

"crack" her neck with her arms to provide some relief. AR 703. She never received treatment for her neck; medical professionals just diagnosed her with neck problems and offered cortisone. AR 703. But her body cannot accept cortisone because of her adrenal gland issue. AR 703. Anti-inflammatories cause nausea and pain in her stomach, as well as a rash. AR 703, 710.

The meniscus in her right knee is torn, and she also has a mild tear in her left-knee meniscus and bursitis. AR 704. She has not had any treatment for her knees, as medical professionals said she was too old for surgery and only offered her cortisone. Id. She wears inserts for her plantar fasciitis, which caused her left-knee bursitis. AR 704-05. She also received "a" cortisone injection in her feet in early 2018. Id.

Plaintiff lives with her husband and son, her son's wife, and their four-year old son. AR 705-06. Plaintiff makes her bed, but otherwise does not do chores. AR 706. Her husband does not work because he has a back injury that rendered him permanently disabled. Id. Plaintiff's son and his wife both work. AR 707. She wants to care for their child, but physically cannot. Id.

Plaintiff drove to the hearing. AR 707. Driving causes her hands to "fizz," itch, tingle, and burn, and if she hits bumps, they hurt. AR 709. She rubs her hands on her pant seams to obtain relief. AR 709. She drives with her palm when she has thumb pain. AR 709. She drives slowly, which angers other drivers on the freeway. AR 707, 709. This causes her to be afraid, so she sometimes grips the steering wheel tightly, which causes more pain. AR 709.

Plaintiff has had hand pain for many years. AR 710. She uses topical anti-inflammatory on her knees, feet, and neck, but not on her hands because she is worried she might get some in her mouth. AR 710.

She can do laundry and shops for groceries with her husband. AR 707. She also cooks, but she cannot open cans, jars, or bottles, or empty the pots because they are too heavy. AR 708, 710-11. Cooking is "not an easy thing [for

her] to do." AR 708. With her left hand, she can stir, eat, and write. AR 711. She can type on a computer but hitting the keys and using the mouse causes pain. AR 711. She can use a cell phone if she must, but she has to use the speaker and texting "takes [her] forever." AR 712.

At some point, doctors diagnosed her with fibromyalgia, but she does not believe she really had it. AR 712-13. Regarding her possibly fibromyalgia, she has pain in the joints and muscle tiredness "from being forced to get through [her] day." AR 713.

Additionally, she has high blood pressure. AR 713. She took lisinopril but did not feel right on that medication, so she stopped taking it. AR 714. Her doctor told her she needed to take it, suggested that she might die if she did not take it, and warned her that he would call an ambulance because her blood pressure was so high. Id. She refused the ambulance and drove herself to the hospital instead, where he blood pressure was brought down, resulting in her release. Id. At a follow-up appointment, doctors doubled her blood-pressure medication amlodipine, but she had a reaction to that medication and stopped taking it. AR 714-15. Finally, another doctor prescribed spironolactone and she took that for a little over six months. AR 715-17.

The primary issue that keeps her from working is her hands. AR 717-18. She has difficulty gripping and not dropping things, or even moving a mouse and clicking it. AR 718. She has hand problems all day. Id. Eventually, her husband told her to retire, so she did even though she could not afford it. Id.

### 3. Analysis

The ALJ provided a detailed summary of Plaintiff's January 2014 Adult Function Report, and the July 2016 and February 2020 hearings. AR 667-68. After consideration of Plaintiff's subjective complaints and the evidence, the ALJ found the medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements "concerning the

11

intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 37. The ALJ found Plaintiff's subjective complaints inconsistent with: (1) the objective evidence; (2) her daily activities; (3) the type and frequency of her treatment; and (4) the "grossly conservative" nature of her treatment since the application date. AR 669-72, 674.

To start, the Court notes the ALJ did not reject Plaintiff's testimony in full, but found it "not entirely" consistent with the record, constrained the RFCs to a limited range of light work, including further reducing the RFC for the time period following July 2019. AR 667, 673. Those determinations necessarily partially credited Plaintiff's subjective complaints. To the extent the ALJ did not fully credit Plaintiff's complaints, she provided legally sufficient reasons for doing so.

First, even though SSI is not payable prior to the month following the month in which the application was filed, the ALJ noted Plaintiff alleged an onset date of September 1, 2009, and therefore reviewed the complete medical history including evidence prior to Plaintiff's November 9, 2013 application date. AR 669-70. The ALJ provided a detailed a detailed summary of the medical evidence of record and noted that it documented a number of mild diagnostic findings and overall normal physical examinations. AR 669-74. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider in her analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example, a physical examination in February and April of 2014 showed normal findings. AR 307-11, 316-17. A few years later, a February 2016 physical examination revealed bilateral wrist pain, but otherwise "normal" and "unremarkable" findings. AR 320. In April 2016, a physical examination revealed symmetrical reflexes, normal sensation, full motor

12

strength, normal coordination and that generally Plaintiff was "in no apparent distress." AR 329-30. June 2016 x-rays of the bilateral wrists revealed normal findings, no soft-tissue abnormalities, with an overall impressions of "[n]ormal bilateral wrists," "normal" right hand, and left hand "[o]steoarthritic changes involving the distal interphalangeal joints of the third and fourth digits, more advanced in the third," but "[o]therwise normal." AR 987-88. The ALJ further noted results of other x-rays and diagnostic findings that revealed overall mild findings. AR 670-72. Plaintiff contends the ALJ unreasonably determined this evidence was inconsistent with her testimony in light of other medical records. Jt. Stip. at 19. However, as mentioned, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [the Court] may not substitute our judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Reddick, 157 F.3d at 725 (ALJ can satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings"). The ALJ properly considered the inconsistency between the medical findings and Plaintiff's subjective allegation of disability as one of other valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, the ALJ relied on Plaintiff's daily activities. AR 669, 672, 674. The ALJ acknowledged Plaintiff's activities were somewhat limited but found "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." AR 669. The ALJ noted Plaintiff's personal grooming, ability prepare meals, occasionally drive and shop, run errands, walk, and b the primary caregiver for her husband. AR 669, 672, 674.

The Court is cognizant that the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are

13

inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). The Court concludes that the ALJ was appropriately cautious in considering Plaintiff's activities of daily living, including by finding that only some of her activities were not entirely consistent with her allegation of disability, and by making the specific finding that those activities were also necessary for obtaining and maintaining employment. The Court agrees that some of the activities have bearing on the assessment of Plaintiff's subjective symptoms. Notably, Plaintiff's ability to serve as the primary caregiver for her permanently disabled husband conflicts with her claim that she herself is also totally disabled. AR 669, 706, 1600. See, e.g., Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility determination where claimant was a caregiver for two years, cleaned, cooked, walked, and drove); Rollins, 261 F.3d at 857 (the ability to care for children may undermine complaints of severe limitations); Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (same, where claimant's activities included occasional care for a friend's child); Leigh v. Acting Comm'r of Soc. Sec. Admin., 2019 WL 6768915, *7 (D. Ariz. Dec. 12, 2019) (claimant's ability to serve as her husband's primary caregiver following his "major back surgery" casted doubt on whether her limitations were as restrictive as alleged); Teverbaugh v. Berryhill, 2018 WL 3570233, *4 (S.D. Cal. July 24, 2018) (claimant's service as part-time caregiver of her disabled grandson constituted a legally sufficient

reason to support adverse credibility determination); Beck v. Colvin, 2014 WL 4251611, at *7 (C.D. Cal. Aug. 27, 2014) (claimant's service as her mother's full-time caregiver while suffering almost all the medical complains she later alleged made her disabled undermined claim of disability); Butler v. Astrue, 773 F. Supp. 2d 975, 982-83 (D. Or. 2011) (claimant's testimony that she cooked for her disabled significant other and helped him with showering and dressing "directly contradicted her contentions about how disabling her pain and other limitations were"). Accordingly, the ALJ properly relied on Plaintiff's activities of daily living in partially discounting her testimony.[6]

Third, the ALJ found that Plaintiff had not generally received the type or frequency of medical treatment one would expect given her alleged level of limitation. AR 669. Indeed, the ALJ noted instances where Plaintiff was non-compliant or not taking any medication, a point which Plaintiff confirmed at the hearings. AR 39 (testimony that she does not take any medication), 314 (treatment note indicating "[patient] states that she is non[-]compliant with her medication"), 320 (treatment note indicating Plaintiff is "not taking any medications at this time"), 670, 703 (testimony that she has "never had treatment for the neck"), 704 (testimony that she has not had any treatment for her knees), 714 (testimony that she declined doctor's recommendation to take

---

[6] Plaintiff complains that the ALJ cited only one medical record stating she is the "primary caregiver for her husband" and contends that the record "provides no context into the level of care involved." Jt. Stip. 9; AR 669, 1600. Plaintiff does not dispute the statement, but simply contends that it does not "appear" that her husband is totally incapacitated. Jt. Stip. at 9. This conflicts, at least partially, with her own testimony that her husband is "permanently disabled" by his back injury. AR 706. As noted, this Court's role in reviewing an assessment of the evidence, is not to re-weigh the evidence or "second-guess" the ALJ's weighing of the evidence, but rather is to determine if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence and, if discounted, supported by specific, clear, and convincing reasons for doing so. See, e.g., Rollins, 261 F.3d at 857.

15

an ambulance), 715. The ALJ properly considered this factor. See Burch, 400 F.3d at 681 (ALJ is permitted to consider lack of treatment in his assessment of subjective complaints); 20 C.F.R. § 416.930 (claimants must "follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work"); see also Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because her testimony was undermined by her own admissions).

Plaintiff takes issue with the ALJ's final finding that her treatment is conservative, citing instances of steroid injections in her feet: one to her left foot January 29, 2019, and one in her right heel on May 14, 2019. Jt. Stip. at 10 (citing AR 1201, 1226, 1233). Plaintiff also concedes, and she testified to the same, that she turned down other injections offered by her providers. Jt. Stip. at 10; AR 703-05. Although many courts have rejected findings of conservative treatment where claimants received injections (see, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (finding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections not conservative); Christie v. Astrue, 2011 WL 4368189, *4 (C.D. Cal. Sept. 16, 2011) (rejecting ALJ's finding that medical care was "conservative" where claimant's pain management treatment included steroid injections, trigger point injections, epidural shots, and narcotic pain medication), some courts have upheld such findings where claimants had limited injections and in consideration of their overall treatment. See, e.g., Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (credibility determination supported in part by evidence of conservative treatment consisting primarily of minimal medication, limited injections, physical therapy, and exercise); Kathy G. v. Saul, 2019 WL 6682381, *4 (C.D. Cal. Dec. 6, 2019) (finding no material error in ALJ's classification of claimant's treatment as conservative when taken as a whole where Plaintiff underwent

16

only one epidural steroid injection); Jones v. Comm'r of Soc. Sec., 2014 WL 228590, at *7-10 (E.D. Cal. Jan. 21, 2014) (affirming ALJ's finding that claimant received conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, trial epidural steroid injections, and massage therapy). Although, as a whole, Plaintiff's treatment appears conservative even considering her feet injections, the Court need not reach the issue as other sufficient valid reasons exist for discounting her testimony. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for finding Plaintiff's testimony not entirely consistent with the record, that is, the normal, unremarkable findings in the objective evidence, Plaintiff's activities of daily living, and overall lack of, or noncompliance with, treatment. Those grounds are sufficient to affirm the ALJ's decision on the issue. Accordingly, reversal is not warranted.

### IV.
### ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: July 13, 2021

_____
JOHN D. EARLY
United States Magistrate Judge